FORET, Judge.
This is a suit on open account instituted by Thomson McKinnon Securities, Inc. against Hardy Warehouse, Inc., seeking the balance due on a commercial hedge account opened by defendant. Defendant filed a reconventional demand seeking damages resulting from unauthorized and unethical transactions allegedly entered into by plaintiff through its commodities broker, Dick Johnson. The trial court rendered judgment in favor of plaintiff on its main demand and denied the reconventional demand and third party demand filed by defendant. Defendant has appealed, raising four assignments of error.
The dispute in question centers around transactions made by defendant on the commodities market through the Chicago Board of Trade on September 13, 14, and 15, 1983. Plaintiff acted as commodities broker for the transactions in question, all of which were conducted at the instance of defendant’s employee, Harold Hardy, Jr. At the close of business on September 15, *992 1983, defendant’s account showed a debit balance of $13,355. Subsequent thereto, defendant made a payment of $4,000, thus reducing the balance owed to $9,355.
On appeal, defendant raises the following assignments of error:
1. The trial court erred in granting judgment in favor of plaintiff.
2. The trial court erred in finding that plaintiff did not commit any unauthorized and unethical transactions by liquidating defendant’s account in a manner inconsistent with defendant’s specific instructions.
3. The trial court erred in awarding attorney’s fees under R.S. 9:2781 when there was a genuine and legitimate dispute involved in this case.
4. The amount of attorney’s fees awarded by the trial court pursuant to R.S. 9:2781 is excessive.
ASSIGNMENTS OF ERROR ■ NO. 1 and 2
In its first two assignments of error, defendant contends that the transactions in question were not authorized by defendant and accordingly, the trial court erred in granting judgment in favor of plaintiff. Alternatively, defendant states that the account in question is a “non-discretionary account,” and hence plaintiff was unable to engage in discretionary trading without prior written authorization from defendant. Because such written authorization does not exist, defendant therefore maintains that the transactions in question were unauthorized and, accordingly, defendant is not liable for the amount sued upon. The trial court’s reasons for judgment in reference to the issues cited above are excellent and are hereby adopted and set forth below:
“The record shows that Hardy is a family-owned corporation which is in the business of buying, drying, storing, and selling rice and soybeans in the Jefferson Davis Parish area. Harold Hardy, Sr. is President, Harold Hardy, Jr. is Vice-president, and David Hardy is Secretary-Treasurer. In addition to being Vice-president, Harold Hardy, Jr., was in charge of buying and selling beans from the farmers and was also in charge of the commercial hedge accounts.
“In 1981 he was authorized and did open a commercial hedge account with Thomson McKinnon in its Lake Charles office. In this connection Mr. Hardy executed several documents, copies of which were introduced in evidence, consisting of a Customer’s Agreement (D-4) and a Risk Disclosure Statement and Commodities Hedge Letter (P-1 in globo).
“Hardy’s dealings with plaintiff concerning this account was with its employee Richard “Dick” Johnson (Johnson), who is a Commodity Account Executive for Thomson McKinnon.
“The crucial period concerning this account which precipitated this litigation involves the dates of September 13, 14 and 15, 1983, and in particular the date of September 15, 1983, and the instructions given Johnson by Hardy on this date.
“However, before discussing the issues and evidence it is necessary to define certain terms used by the parties in this highly technical and specialized business which definitions the court has gleaned from the record.
“The Commodities Account in question is a non-discretionary account which means that the broker must have approval from the customer in order to make trades in the account. ‘Bought long’ means the customer has purchased certain contracts, and ‘sold short’ means the customer has sold certain contracts. A ‘spread position,’ also known as a ‘straddle,’ means that at the same time, a customer purchases certain contracts (bought long) and sells (sold short) an equal number of contracts. If the market goes up he gains on the ‘longs’ and loses on the ‘shorts,’ thus holding his position relatively stable. To ‘leg out’ of a spread means to liquidate one side of the spread without simultaneously liquidating the other side. A ‘day trade' means that the customer gets in and out of the market the same day without carrying his position overnight. The sale or purchase of soybean future contracts is done in one thou *993 sand bushel quantities. For example, the language ‘S 20 JAN Beans 908’ means sold short 20,000 bushels of January soybeans at $9.08 per bushel.
“Hardy signed a commodity hedge letter which allowed it to sell and purchase future contracts at a reduced margin requirement and to maintain a lower margin requirement. In order to obtain these benefits Hardy had to agree that all orders given for the sale or purchase of future contracts would represent sales or purchases against a corresponding quantity of purchases or sales of physical grain or future contracts bought or sold simultaneously in different months or markets.
“Hardy also signed a risk disclosure statement acknowledging that trading in commodity futures contracts is a risky business which can result in substantial losses due to the nature of the market.
“As noted above, the critical period involves the dates of September 13, 14 and 15, 1983, and specifically the instructions given Johnson by Hardy concerning the trades made on September 15.
“Except for what were the specific instructions given Johnson by Hardy on September 15, there is very little dispute as to what transpired. The documents introduced in evidence and the testimony of Hardy and Johnson indicate that on September 13 Hardy bought long 50 JAN beans and sold short 50 MAY beans. This was a spread position. At the close of trading on this date the account showed a credit balance of $2,396.00.
“On September 14 there was quite a lot of trading in the account. Part of the spread put on the previous day was liquidated by legging out one side of the spread. At the close of trading the account now showed a debit balance of $13,476.20, which means Hardy suffered a loss of $15,-872.20.
“On September 15, at 9:31 a.m., Hardy called Johnson authorizing him to purchase 20 JAN Beans which Johnson did at 9:38 a.m. This was a day trade. Hardy had a quote machine at his office which allowed him to follow the market. Since the market was going against him he called Johnson at 9:51 to get him out of the market. Johnson does not deny that Hardy told him to get him out of the market. What is in dispute is the specific instructions which Hardy gave Johnson to accomplish this. Johnson testified that he called Hardy back to get some clarification since Hardy was in a spread position. He wanted to know whether Hardy wanted to take it off as a spread, or to leg out of it as he had done before. Johnson testified that Hardy told him to do it any way he wanted to which meant to use his discretion. Hardy does not deny that Johnson called him back but testified that he told him to get him out which meant he wanted to clean his sheet right then.
“After this conversation Johnson made the following trades to get Hardy out of the market. At 10:38 a.m. he bought 50 MAY Beans. At 12:06 p.m. he sold 20 JAN Beans and at 1:14 p.m. just before the market closed he sold 30 JAN Beans which cleared the account. At the close of the day the account showed a debit balance of $13,355.00. It is interesting to note that at the close of the previous day the account was also in a debit balance of $13,476.20.
“The evidence shows that after becoming aware of the loss and margin demands, Hardy and his brother David went to Thomson-McKinnon’s office early Monday morning on September 19 to discuss the matter. Present at this meeting- were Harold Hardy, Jr., David Hardy, Dick Johnson and Troy L. O’Grady, Vice-president and Branch Manager of the Lake Charles Office. O’Grady also supervises the Account Executives. A copy of O’Grady’s diary of the meeting was introduced in evidence as P-6. O’Grady and Johnson testified that Hardy stated that Johnson did not do anything that was not authorized. However, Johnson did admit that he made an error in market judgment. After the meeting, Hardy wired $4,000 which was credited to the account on September 20, leaving a balance due of $9,355.00.
“After carefully reviewing all of the evidence, the court concludes that Hardy did leave it up to Johnson’s discretion to get him out of the market on September 15. Although Johnson made an honest error in market judgment, he did not do anything *994 that he was not authorized to do by Hardy. Therefore, defendant is liable to plaintiff for $9,355.00, the principal amount claimed.
“Having found in favor of plaintiff on the principal demand, defendant’s recon-ventional demand and third party demand are rejected.”
See also Bellard v. Mowata Rice Drier, Inc., 400 So.2d 731 (La.App. 3 Cir.1981), where the court found that the principal had given his agent general verbal authorization to market soybeans at a price to be selected by the agent and therefore had no cause of action for losses resulting from errors in market judgment committed by the agent.
ASSIGNMENT OF ERROR NO. 3
In its third assignment of error, defendant contends that the trial court erred in awarding attorney’s fees pursuant to R.S. 9:2781. Specifically, defendant states that it had reasonable grounds to deny payment of the amount sued upon and should therefore not have been assessed attorney’s fees pursuant to the aforesaid statute. Although this writer sees some merit to the argument advanced by defendant, R.S. 9:2781, by its express language, mandates an award of attorney’s fees where the claimant has proven compliance therewith. Accordingly, it does not except from its coverage defendants who have denied payment based upon reasonable, albeit unsuccessful, grounds. Thus, with some trepidation, we adhere to the express language of this statute and find that defendant is liable for attorney’s fees in accordance with the aforesaid statute, notwithstanding the fact that defendant may have had reasonable grounds to defend this action.[1]
Defendant also contends that the plaintiff cannot recover attorney’s fees because plaintiff failed to introduce evidence as to the time or effort expended by plaintiff’s attorney nor did plaintiff introduce any other evidence relative to the amount of attorney’s fees that should be awarded. We disagree. It is well 'established that proof of value of the attorney’s service is not necessary where such services are evident from the record and/or are rendered under supervision of court. Ross v. Sheriff of Lafourche Parish, 479 So.2d 506 (La.App. 1 Cir.1985).
ASSIGNMENT OF ERROR NO. 4
Finally, defendant also argues that the amount of attorney’s fees awarded by the trial .court, i.e., $3,000, is excessive. Our careful review of the record indicates that defendant’s contention in this regard is without merit.[2]
In view of the above and foregoing, the judgment of the trial court is affirmed, and all costs of this appeal are assessed to defendant-appellant, Hardy Warehouse, Inc.
AFFIRMED.
DOMENGEAUX, J., concurs.

. See also Chachere v. Bren Lynn Corp., 561 So.2d 140 (La.App. 3 Cir.1990), in which case this author concurred in part and dissented in part, arguing that the provisions of R.S. 9:2781 should not be applicable where the defendant asserts a good faith defense based upon reasonable grounds.

. We note that plaintiff, in its brief, asked for damages for frivolous appeal, increase in the trial court’s award of attorney’s fees, and for additional attorney’s fees incurred in connection with this appeal. However, plaintiff has not answered the appeal, and we therefore cannot consider such relief. Hilbun v. Hilbun, 498 So.2d 1127 (La.App. 3 Cir.1986); Bank of Logansport v. Sewell, 467 So.2d 1217 (La.App. 2 Cir.1985).